BARBARA LOUISE FRISBIE, ADMINISTRATRIX (ESTATE OF SAMUEL RAYMOND FRISBIE) *vs.* ANTHONY J. SCHINTO ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 1st—decided November 5th, 1935.

*John Keogh* and *Sidney C. Perell,* for the appellant (plaintiff).

*Stanley T. Jennings* and *John T. Dwyer,* with whom, on the brief, was *Earl H. Jagoe,* for the appellees (defendants).

HAINES, J.  The trial court in setting aside the verdict stated three grounds for doing so, namely: that the testimony of one of the plaintiff's witnesses was false and unworthy of belief; that the charge was erroneous in that it failed to contain reference to a certain statute claimed to be essential to a proper consideration of the issues, and was further erroneous in submitting the case to the jury on the possible theory of supervening negligence when the conditions for its operation did not appear in the evidence.

The memorandum of decision contains a long review of the testimony of plaintiff's witness, Hutchins, who claimed he was an eyewitness of the accident, and it reaches the conclusion that "witness Hutchins was not worthy of belief; his story in its essential features was 'built up,' and perjury;" while the defendant operator with the other two in the car with her "were truthful and honest witnesses."

Reading the entire record of the evidence which was before the jury, we cannot hold that the jury acted unreasonably if they credited the testimony of Hutchins.  We find nothing inherently incredible in his testimony and it is supported in several important particulars by other evidence.  It did conflict sharply in some points with the testimony of the defendant driver and her companion, who was the other de-

fendant's wife, and of the latter's maid. They had a manifest and vital interest in the result, while Hutchins was a nonresident living in New York, and it does not appear that he was other than a stranger to all parties. The credibility of these witnesses was a question for the jury. "Where there is testimony sufficient to support a verdict, a trial court is not at liberty to substitute its own judgment that it is incredible, for the contrary conclusion of the jury, unless that conclusion is one which could not have been reasonably reached or is not legally permissible. Only by adherence to this principle can be preserved the right of a jury to determine the credibility of testimony and to decide where, as between conflicting evidence, the truth lies." *Glazer* v. *Rosoff*, 111 Conn. 707, 708, 709, 151 Atl. 165; *Falleo* v. *Byrolly Transportation Co.*, 109 Conn. 500, 501, 147 Atl. 16; *Canfield* v. *Sheketoff*, 104 Conn. 28, 30, 132 Atl. 401. The record does not indicate that the jury were improperly influenced in any way in reaching their conclusion.

The memorandum of decision indicates that the trial court gave much weight to its observation of the witnesses upon the stand. We must recognize, however, that the twelve members of the jury were afforded the same opportunity and were entitled to rely upon their own conclusions honestly reached. They were entitled to credit all or any part of the testimony which they reasonably felt to be true. We would hesitate to say that the jury could not properly have found the defendant negligent even if they discredited some or all of the testimony of Hutchins. We cannot sustain the trial court in setting aside the verdict on the first ground.

The second ground stated is the failure of the charge to call attention to and explain General Statutes,

§ 1598(f), which appears in the footnote. It was conceded that the decedent was struck by the defendant's car while he was engaged in the removal of a flat tire from the left rear wheel of the truck. He had parked the truck with its left wheels on the concrete roadway and the truck at all times was thereafter without any lights. It was the duty of the court to call the attention of the jury to this statute, which requires lights under those circumstances upon a parked car. Since the action of the decedent clearly violated the provisions of this statute, the jury could have found him negligent in so doing and if they thereafter found that that negligence was a proximate cause of the injury, a verdict for the defendant would have been required. The statute is intended to protect other users of the highway and a violation of it is negligence per se. "When the Legislature establishes a rule of conduct by statute and its purpose in so doing is to protect others from injury, a violation of that rule of conduct constitutes negligence." *Gonchar* v. *Kelson,* 114 Conn. 262, 264, 158 Atl. 545; *Murphy* v. *Way,* 107 Conn. 633, 638, 141 Atl. 858; *Syssa* v. *Heminway,* 106 Conn. 499, 501, 138 Atl. 233.

The complaint states as grounds of recovery both negligence at common law and supervening negligence. The general verdict leaves it uncertain upon which of these grounds of recovery the verdict was reached. Formerly we held that under such circumstances, if no

Sec. 1598. ". . . (f) Each motor vehicle, when standing upon a public highway during the period from one-half hour after sunset to one-half hour before sunrise, shall show at least one light in front, such light to be on the side nearest to the center of the road and shall display at least one red light in the rear, but this provision shall not apply to any motor vehicle in a place and under conditions where there is sufficient artificial light to make such motor vehicle clearly visible from a distance of not less than two hundred feet in every direction."

interrogatories had been filed and it appeared that the general verdict could be sustained on either ground, the verdict was good. *Aaronson* v. *New Haven,* 94 Conn. 690, 697, 110 Atl. 872; *Worth* v. *Dunn,* 98 Conn. 51, 63, 118 Atl. 467; *Wladyka* v. *Waterbury,* 98 Conn. 305, 313, 119 Atl. 149; *Callahan* v. *Jursek,* 100 Conn. 490, 493, 124 Atl. 31. Our decision in *Ziman* v. *Whitley,* 110 Conn. 108, 147 Atl. 370, however, limited the application of this doctrine by the following language: "Where . . . different specifications of fact are alleged in support of one essential right, as where various grounds of negligence are alleged as a basis for a recovery for injuries resulting from a particular accident, it is the sounder policy to permit an appellant to take advantage upon appeal of errors affecting one specification of negligence only, even though no interrogatories have been filed." (p. 116) It follows in this case that if the issue of negligence was not properly presented to the jury by the charge, failure to do so was error and furnishes a proper ground for setting aside the verdict. We must, therefore, sustain the trial court in doing so on this ground.

Since this conclusion will make a new trial necessary and the question may again arise therein, we take occasion to consider the third ground given by the court for setting aside the verdict, namely, that the doctrine of supervening negligence had been erroneously placed before the jury, because upon the evidence before them it could have no proper application. The jury could reasonably have found that the decedent parked his truck so that it was in part upon that portion of the concrete roadway in use by cars approaching from the rear of the truck; that it was in the night season, but he turned off the motor knowing that all lights on the truck were thereby extinguished; that he thereafter took a position opposite the left

rear wheel, standing thus still further out into the roadway, and bent over and proceeded to work upon the release of the flat tire; and that all this took place before the defendant's car arrived on the scene. It would have been a reasonable conclusion for the jury that upon this state of facts the decedent had negligently placed himself in a position of peril. This would be the first of the four conditions requisite for the application of the doctrine, namely, that the injured party has already come into a position of peril. *Fine* v. *Connecticut Co.*, 92 Conn. 626, 631, 103 Atl. 901.

The jury could also have found from the evidence that having thus come into a position of peril, the decedent remained in the same position and was "merely passively permitting an already fixed condition to remain unchanged" and that he did nothing actively to bring into the situation which confronted the defendants "any changed conditions" of peril, and nothing after his original negligent act to increase the existing peril or bring about the resulting injury. *Correnti* v. *Catino,* 115 Conn. 213, 218-224. "The time came . . . when the decedent, owing to his want of care in part at least, stood in actual present peril, that is to say, where, if he did nothing by way of resort to preventive measures, the oncoming car, if not stopped, would hit his team—where, in other words, it was no longer a question of getting into trouble but one of escape from a trouble he was already in. If the car could not then have been stopped or reasonably could not, the deceased, like every other person guilty of contributory negligence effectively and proximately contributing to his receipt of injuries, must suffer the consequence of his concurring negligence as a proximate cause of the fate which was his. It is from that moment that the in-

quiry involved in the application of the so-called last clear chance doctrine begins. It is not concerned with earlier happenings or conditions, but only those then existing or subsequently arising, and it is upon them, and them alone, that the determination of the question involved is dependent. . . . It is important that this be constantly borne in mind . . . in any attempt to make practical application of the last clear chance principle. Otherwise, the place which contributory negligence holds in our law is lost sight of." *Bujnak* v. *Connecticut Co.*, 94 Conn. 468, 472, 109 Atl. 244.

In the present case, the trial court reached the mistaken conclusion that because the position of peril in which the decedent placed himself, continued up to the time he was injured, "therefore his negligence continued to the time of his injury and was an efficient cause of it." By his negligent act he had created a situation of peril, but from that moment to the moment of the injury no further active negligent act of his in any way increased that peril.

The second condition required to permit the application of the doctrine is "that the injuring party then or thereafter becomes, or in the exercise of ordinary prudence ought to have become, aware not only of that fact [of the peril] but also that the party in peril either reasonably cannot escape from it or apparently will not avail himself of opportunities open to him for doing so." *Fine* v. *Connecticut Co.*, supra, p. 631. There was evidence before the jury permitting the conclusion that as the defendant's car approached, the decedent remained in the same position in the path of the car, busily engaged in his work and oblivious of the approach of the car and apparently was not going to remove himself from its path. They would have been justified in finding from the evidence that in the exercise of ordinary prudence the defendants ought to

have become aware, as Hutchins says he became, of the peril of the decedent and that he was apparently oblivious of the approach of the car and not going to remove himself.

The third and fourth conditions permitting the application of the doctrine are that the injuring party subsequently (that is, after the acquisition of the knowledge above referred to) had the opportunity by the exercise of reasonable care to save the decedent from harm, and failed to do so. *Fine* v. *Connecticut Co.*, supra, p. 631. Reading the evidence with care we cannot say, if the jury so found, that their conclusion was in any way unreasonable. For these reasons, we cannot sustain the trial court in its conclusion that the doctrine of supervening negligence had no application.

There is no error.

In this opinion the other judges concurred.